ABRAHAM SEKULOW AND FLORENCE SEKULOW, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Sekulow v. Commissioner
Docket No. 7836-78
United States Tax Court
T.C. Memo 1980-564; 1980 Tax Ct. Memo LEXIS 25; 41 T.C.M. (CCH) 582; T.C.M. (RIA) 80564; December 17, 1980
David R. Cohan, for the petitioners. John F. Dean, for the respondent. WILBUR
MEMORANDUM FINDINGS OF FACT AND OPINION WILBUR, Judge: Respondent determined a deficiency in the amount of $ 5,008 in petitioners' Federal income taxes for 1974. The issues for decision are: (1) whether petitioners advanced sums to a corporation; (2) whether such sums represented bona fide loans or contributions to the corporation's capital; (3) to the extent the funds advanced to the corporation are considered loans, did they constitute business bad debts under section 166; [1] and (4) if they are bad debts under section 166, were they partially worthless in 1974. FINDINGS *26 OF FACT Some of the facts have been stipulated and are found accordingly. Petitioners [2] resided in Baltimore, Maryland at the time the petition in this case was filed. They filed their joint Federal income tax return for the year 1974 with the District Director at Philadelphia, Pennsylvania. Petitioner and his brother founded Sekulow Brothers over 50 years ago, and incorporated the business in 1940. Sekulow Brothers, Inc. is in the ladies' millinery business. The corporation was petitioner's sole source of income. In 1972, after buying up his brother's shares, petitioner became president and majority stockholder. Petitioner, his wife, and son then owned all the shares of the corporation. Starting around 1971, the corporation sustained operating losses which became progressively larger as the years went by. In 1973, the situation deteriorated and the corporation did not have the funds necessary to meet its payroll. In order to raise funds to continue operations, the corporation made substantial efforts to obtain *27 loans from banks and other financial institutions, but was turned down whenever a loan was requested. Efforts were made to obtain inventory financing through sources other than banks, including personal and business acquaintances, but all efforts to obtain money from outside sources also were unsuccessful. To meet the payroll expenses, two withdrawals totalling $ 29,000 were made from the Sekulow Brothers, Inc. pension trust in 1973 and put into the ailing business. The pension trust account had been set up as a spendthrift trust in 1966 to provide retirement benefits to employees. Petitioner was a trustee. The trust entered the transaction on its books as a receivable from Sekulow Brothers, Inc. No notes or other evidence of indebtedness were created. In November 1973, $ 5,000 was paid back to the trust by the corporation. The business continued to lose money. By the end of the fiscal year ending August 31, 1973 operating losses totalled over $ 100,000 and by the end of the 1974 fiscal year, the losses had reached almost $ 300,000. Sekulow Brothers filed for a Chapter XI reorganization in 1974, and the plan was approved in January of 1976. The plan provided that creditors *28 would get 20 cents on the dollar over the next five years, paid out 2-1/2 cents a year for the first two years, then 5 cents a year for the next 3 years. The trust was not listed among the outstanding creditors and petitioner did not file a creditor's claim for any amount. Petitioner, upon the advice of his attorney, was of the opinion that the outside creditors would not approve a plan, or at a minimum its chances for success would be severely jeopardized, were he to post a claim against the corporation's assets when the other creditors stood to lose 80 percent of their investment if he did not file a claim--and even more if he did submit one. No record of loans from stockholders appears until the fiscal year ending August 31, 1975, at which time loans of $ 38,500 were listed on the corporation's tax return. The trust was later terminated, and the proceeds went to pay benefits to all the employees save Mr. Sekulow. He alone suffered the loss of the sums advanced to the corporation. In March, 1979 the corporation went bankrupt. In 1974, petitioner deducted $ 15,200 from his income tax return as a partially worthless bad debt. He contends that the $ 38,500 ($ 29,000 from *29 the trust and $ 9,500 from other unspecified sources) represented his own funds and his pension money, and that he loaned this sum to the corporation as a short-term loan, hopefully to have been paid back after the big hat season around Easter and Mother's Day. The money was not paid back, save for the $ 5,000 put back into the trust. Petitioner argues that the loan became at least 40 percent worthless in 1974. This 40 percent figure was arrived at after talking with his auditor. The respondent denied the deduction in full, arguing that (1) the advances did not come from Mr. Sekulow, but from the trust; (2) even if Mr. Sekulow was the source, the sums advanced represented contributions to capital and not loans; (3) if they were loans, they were nonbusiness loans; (4) even if they were bad debts under section 166, they were not partially worthless in 1974. OPINION Petitioner and his brother had been in the millinery business for over 50 years. Since 1940, they have been incorporated under the name Sekulow Brothers, Inc. In 1972, petitioner bought up his brother's shares. The corporation was then wholly owned by petitioner, his wife and his son. The business started losing *30 money in the early 1970's. By the end of fiscal year 1974, the operating losses amounted to almost $ 300,000. The corporation could no longer obtain financing from banks or other sources. To meet payroll expenses in 1973, petitioner advanced $ 38,500 to the corporation. Of this amount, $ 29,000 came from the pension trust set up for corporate employees, of which petitioner was trustee and chief beneficiary. The remaining $ 9,500 was obtained from petitioner or unspecified sources. Petitioner argues that he intended the advance to be a short-term loan, to be paid back after the heavy reason from Easter to Mother's Day. No notes or other evidences of indebtedness were drawn up. In November 1973, $ 5,000 was repaid to the trust. No further repayments were made. In 1974 the corporation filed for Chapter XI reorganization. Neither petitioner nor the trust submitted a claim. The advances first appeared on the corporation's records for the 1975 fiscal year, at which time the entire $ 38,500 was listed as a debt to stockholders. Petitioner deducted $ 15,200 on his 1974 income tax return as a partially worthless bad debt. After discussions with his auditor, petitioner had concluded *31 that at least 40 percent of the $ 38,500 advance was worthless. The Service disallowed the deduction. The first issue we must decide is whether the amounts advanced were loans or contributions to capital, as all the other issues before us depend upon the initial classification of the advances. We assume, arguendo, that the $ 38,500 amount advanced represented petitioner's own funds. [3]
*32 Section 166[4] permits a deduction for bad debts which become partially (for business debts) or totally worthless during the taxable year. Only a bona fide debt qualifies for section 166 treatment. A bona fide debt is defined as a debt which arises from a debtor-creditor relationship based upon a valid and enforceable obligation to pay a fixed or determinable sum of money. Section 1.166-1(e), Income Tax Regs. Contributions to capital do not qualify for bad debt treatment. Section 1.166-1(c), Income Tax Regs.
The characterization of advances is a question of fact to be determined from all the evidence, with the burden of establishing that the advances were loans resting on the taxpayer. *33 Gilbert v. Commissioner,262 F. 2d 512 (2d Cir. 1959), cert. denied 359 U.S. 1002 (1959); Yale Avenue Corp. v. Commissioner,58 T.C. 1062 (1972); Matter of Uneco, Inc.,532 F.2d 1204 (8th Cir. 1976). We have previously articulated the question thus: Was there a genuine intention to create a debt, with a reasonable expectation of repayment, and did that intention comport with the economic reality of creating a debtor-creditor relationship? Litton Business Systems, Inc. v. Commissioner,61 T.C. 367, 377 (1973). The task is to determine whether the asset has been put at the risk of the corporate venture, thereby representing an equity investment, or whether it has been transferred with reasonable expectations of reimbursement regardless of the success of the business. Gilbert v. Commissioner,248 F.2d 399 (2d Cir. 1957), remanding for further proceedings a Memorandum Opinion of this Court. To aid in the characterization of transactions as either debt or equity, the courts have looked to a number of factors. [5] No single factor is controlling. *34 Kelley Co. v. Commissioner,326 U.S. 521 (1946). The transaction must be remeasured by these objective tests of economic reality. Scriptomatic, Inc. v. United States,555 F.2d 364 (3d Cir. 1977). Applying the above factors to the transaction in question, we are convinced that the advances were contributions to capital and not bona fide loans. *35 First, none of the formal indicia of debt were present in this transaction. No written evidence of indebtedness was prepared. No fixed maturity date was set, although petitioner testified he hoped to be repaid sometime after the heavy season. No interest rate was fixed, if indeed any was ever contemplated, and the principal was to be repaid only if the corporation generated enough income to enable repayment. The corporation did not treat the advance as it treated other debts, and it was not listed on the Chapter XI reorganization schedule of debts. There was no formal indication of its existence until it appeared on the corporation income tax return for the 1975 fiscal year, after petitioner had written off 40 percent of the total amount of the advance. The transaction fails to satisfy the requirements of a classic debt, which is an unqualified obligation to pay a sum certain at a fixed maturity date along with specified interest payable regardless of the debtor's income or lack thereof. Gilbert v. Commissioner,248 F.2d 399 (2d Cir. 1957). Another test used by the courts, which also incorporates several of the factors enumerated in note 5, supra, is *36 the independent creditor test, described as the "touchstone of economic reality." Scriptomatic, Inc. v. United States,supra at 367. The analysis under this approach is expressed in terms of two lines of inquiry: (1) did the advance result from an arm's-length relationship, and/or (2) would an outside investor have advanced funds on similar terms. Scriptomatic, Inc. v. United States,supra at 368. If the shareholder's advance is far more speculative than an outsider would consider, then it may be a loan in name only. Fin Hay Realty Co. v. United States,398 F.2d 694 (3d Cir. 1968). The parties have stipulated that Sekulow Brothers, Inc. could not, despite numerous efforts, obtain outside financing. When a loan is very risky, it may properly be regarded as venture capital. Gilbert v. Commissioner,supra. The business was failing, if indeed it was not already insolvent, and an advance under these circumstances may be characterized as a contribution to capital. See *37 Casco Bank and Trust Co. v. United States,544 F.2d 528 (1st Cir. 1976). In cases of insolvency or severe financial difficulties with little hope for recovery, there can be very little hope of repayment. See Funk v. Commissioner,35 T.C. 42 (1960). The advance herein fails the independent creditor test, as there was no arm's-length relationship, and outside investors would not, and in fact refused, to advance funds on similar terms. All of the objective criteria considered point towards characterizing the advance as a contribution to capital, and not as a loan. Accordingly, we hold that the advance was a contribution to capital. Therefore, the advance cannot be characterized as a bad debt under section 166, and no bad debt deduction will be allowed. Our holding on this issue obviates discussion of the other issues before us. Decision will be entered for the respondent. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the taxable year in question.↩
2. Since Florence Sekulow is a party to this action by reason of filing a joint return with her husband, Abraham Sekulow will be referred to as petitioner.↩
3. The respondent did not allege or present proof that the $ 9,500 came from any source other than the petitioner. As to the $ 29,000, we find petitioner's testimony regarding these transactions, occurring during what was surely a troubling time for him, to be very candid and convincing. He testified that it was his own personal pension money which was borrowed, and this was confimred when he did not receive any allotment upon the termination of the pension fund while attempting to ensure that all other employees were paid their full share of the fund. While the documentary evidence is unclear, and conflicting in some instances, the Sekulow Brother's fiscal year 1974 Federal income tax return does show a $ 38,500 debt owing to its shareholders. Additionally, we were most impressed with petitioner's own explanation of the events. Nevertheless, in light of our holding, it is unnecessary to determine the source of sources of the funds and the amounts allocable to each source.↩
4. SEC. 166. BAD DEBTS. (a) GENERAL RULE.-- (1) WHOLLY WORTHLESS DEBTS.--There shall be allowed as a deduction any debt which becomes worthless within the taxable year. (2) PARTIALLY WORTHLESS DEBTS.--When satisfied that a debt is recoverable only in part, the Secretary or his delegate may allow such debt, in an amount not in excess of the part charge off within the taxable year, as a deduction.↩
5. There are at least 16 separate factors generally used by the courts in determining whether amounts advanced to a corporation constitute equity capital or indebtedness. They are: (1) the intent of the parties; (2) the identity between creditors and shareholders; (3) the extent of participation in management by the holder of the instrument; (4) the ability of the corporation to obtain funds from outside sources; (5) the "thinness" of the capital structure in relation to debt; (6) the risk involved; (7) the formal indicia of the arrangement; (8) the relative position of the obligees as to other creditors regarding the payment of interest and principal; (9) the voting power of the holder of the instrument; (10) the provision of a fixed rate of interest; (11) a contingency on the obligation to repay; (12) the source of the interest payments; (13) the presence or absence of a fixed maturity date; (14) a provision for redemption by the corporation; (15) a provision for redemption at the option of the holder; and (16) the timing of the advance with reference to the organization of the corporation. [Fin Hay Realty Co. v. United States,398 F.2d 694, 696 (3d Cir. 1968). Fn. ref. omitted.] See also Matter of Uneco, Inc.,532 F.2d 1204 (8th Cir. 1976); In re Indian Lake Estates, Inc.,448 F. 2d 574 (5th Cir. 1971); Casco Bank and Trust Co. v. United States,544 F. 2d 528↩ (1st Cir. 1976).