T.C. Memo. 2003-54

UNITED STATES TAX COURT

DELTA PLASTICS, INC., Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 10246-00.          Filed February 28, 2003.

<u>Tony L. Wilcox</u> and <u>David M. Graf</u>, for petitioner.

<u>Kirk S. Chaberski</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

SWIFT, <u>Judge</u>:  For 1996, respondent determined a deficiency
in petitioner's Federal income tax of $31,873.

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year in issue.

The issue for decision is whether certain payments petitioner made to its shareholders in 1996 should be treated as deductible interest on shareholder loans or as nondeductible dividends on shareholder equity.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

At the time the petition was filed, petitioner's principal place of business was located in Hot Springs, Arkansas. Petitioner was incorporated in the State of Arkansas on October 12, 1992, and petitioner began operations in August of 1993. Petitioner manufactures and sells plastic jars and lids for use primarily in the cosmetic and pharmaceutical industries.

From 1981 to 1987, Lothar Schweigert, petitioner's principal shareholder, owned a controlling interest in and was an officer and employee of Santa Fe Plastics (Santa Fe), a successful company based in Santa Fe Springs, California, that manufactured and sold plastic products similar to those manufactured and sold by petitioner.

From 1981 to 1987, other of petitioner's shareholders, officers, and directors (namely Robert TeSelle, William D. Maffit, Jan A. Strand, and Chris Rakhshan) also were employed in various capacities at Santa Fe. TeSelle was chief financial

officer, Maffit was production manager, Strand was head of sales and marketing, and Rakhshan was plant manager.

In October of 1987, Schweigert and TeSelle sold their respective stock interests in Santa Fe to Kerr Glass Manufacturing Corp. In connection with the stock sale, both Schweigert and TeSelle entered into covenants not to compete with Santa Fe. The covenants not to compete had a duration of 5 years and apparently encompassed the entire United States.

During 1991 and 1992, Maffit and Strand used their understanding and knowledge of the plastics manufacturing business to put together a business plan for petitioner that projected an early likelihood of success and purported to improve upon the model used to start and develop Santa Fe. Prior to the startup of petitioner's operations in August of 1993, TeSelle, Maffit, and Strand contacted and received commitments from former customers of Santa Fe, signed contracts with suppliers and equipment manufacturers, and otherwise prepared for petitioner to begin operations. The record is unclear as to Schweigert's participation in planning for the startup of petitioner.

Prior to August of 1993, petitioner received as initial capital a total of $183,500 in equity contributions from its seven original shareholders. The amount of each shareholder's initial equity contribution and the number and percentage of

shares of stock in petitioner that each shareholder received is set forth below:

| Shareholder | Equity Contribution | Shares of Common Stock | Percentage of Common Stock |
|---|---|---|---|
| Lothar Schweigert | $ 88,000 | 880,000 | 47.96 |
| Robert TeSelle | 26,000 | 260,000 | 14.17 |
| Jan Strand | 16,500 | 165,000 | 8.99 |
| William Maffit | 16,500 | 165,000 | 8.99 |
| Chris Rakhshan | 16,500 | 165,000 | 8.99 |
| Paul Stevenson | 10,000 | 100,000 | 5.45 |
| Daniel Kliska | 10,000 | 100,000 | 5.45 |
| | $183,500 | 1,835,000 | 100.00 |

Also, petitioner received a total of $2,322,838 in the form of secured startup loans -- $2,169,013 from three unrelated creditors and $153,825 from Schweigert.  Each secured loan was evidenced by a promissory note executed on behalf of petitioner.

In addition, petitioner received from a group of individuals consisting of six of petitioner's shareholders and one other individual (collectively referred to hereinafter as the "debenture holders") funds totaling $1,337,500 (debenture funds). Documents entitled debenture notes, executed on behalf of petitioner in favor of the debenture holders, reflected the debenture funds.

The amount and percentage of total debenture funds received by petitioner from each debenture holder are set forth below:

| Debenture Holders | Debenture Funds | Percent of Total Debenture Funds |
|---|---|---|
| Lothar Schweigert | $ 687,000 | 51.35 |
| Robert TeSelle | 149,000 | 11.14 |
| Jan Strand | 90,500 | 6.77 |
| William Maffit | 90,500 | 6.77 |
| Chris Rakhshan | 90,500 | 6.77 |
| Paul Stevenson | 115,000 | 8.60 |
| Bernard Kliska[*] | 115,000 | 8.60 |
| | $1,337,500 | 100.00 |

[*] Bernard Kliska is the father of Daniel Kliska, a shareholder of petitioner.

The written debenture notes, executed on August 1, 1993, provided a 10-year schedule over which petitioner was to repay the debenture holders the debenture funds and over which petitioner was to pay the debenture holders amounts designated as interest on the debenture funds, with the final payment due and payable on June 15, 2003.  For the first 5 years of the debenture notes, designated interest only was due and payable at the end of the second, third, fourth, and fifth years at a stated interest rate of 6 percent per year.[1]  For the second 5 years of the debenture notes, principal and designated interest payments were due and payable in equal monthly installments with a stated interest rate of 1 percent above the prime rate of interest as reported by the Wall Street Journal.

Payments due on the debenture notes were not dependent upon the profits or losses of petitioner.  Priority of payment on the

---

[1]  The debenture notes executed in favor of Schweigert, TeSelle, Stevenson, and Kliska provided for a partial repayment of principal at the end of the fifth year.

debenture notes was equal among the debenture holders, and none of the debenture holders received a management position or an increase in management responsibilities with petitioner as a result of the debenture funds petitioner received.

The debenture notes were unsecured and subordinated to claims of petitioner's secured creditors, and, if not paid, the debenture holders could enforce payment on the debenture notes only if the holders of more than 50 percent of the value of all the outstanding debenture notes joined in a proceeding against petitioner to enforce payment. From August of 1993 through the time of trial in 2002, petitioner made all scheduled payments of principal and designated interest due on the debenture notes.

When petitioner began operations in August of 1993, the above initial sources of funding (treating the debenture funds as debt of petitioner and not as equity) resulted in a debt-to-equity ratio for petitioner of approximately 26:1. In just over 3 years, petitioner's debt-to-equity ratio (treating the debenture funds as debt of petitioner and not as equity) was reduced to approximately 4:1. The rapid decrease in petitioner's debt-to-equity ratio from 1993 to 1996 reflected petitioner's success in generating operating revenue.

Comparative 1993-1996 yearend financial information for petitioner (treating the debenture funds as debt of petitioner and not as equity) is set forth below:

| Yearend Financial Information | | | | |
|---|---|---|---|---|
| | 1993 | 1994 | 1995 | 1996 |
| Gross Revenue | $ 359,714 | $5,246,515 | $ 8,840,065 | $13,580,098 |
| Total Assets | 4,287,799 | 7,391,115 | 12,001,652 | 14,611,042 |
| Total Liabilities | 4,119,859 | 6,638,531 | 10,443,799 | 11,392,737 |
| Shareholder Equity | 167,940 | 752,584 | 1,557,853 | 3,218,305 |
| Debt-to-Equity Ratio | 25:1 | 9:1 | 7:1 | 4:1 |

As of the time of trial in 2002, petitioner had yet to declare or pay a cash dividend.

At the end of 1993, petitioner's basis in its capital assets including land, buildings, equipment, vehicles, tooling and equipment was $3,598,463.

For 1993-1996 and for Federal income tax purposes, petitioner was a cash basis taxpayer. On petitioner's timely filed 1996 corporate Federal income tax return, an interest deduction of $93,746 was reflected for the payments designated as interest that petitioner made in 1996 on the debenture notes.

On audit, respondent determined that for Federal income tax purposes the total debenture funds of $1,337,500 represented equity to petitioner rather than debt, and respondent denied petitioner's claimed $93,746 interest deduction relating to the designated interest paid in 1996 on the debenture funds.

OPINION

As a general rule, section 163(a) provides that a deduction shall be allowed for all interest paid on indebtedness.

Whether funds received by a corporation represent debt or equity is a question of fact generally to be considered and analyzed by reference to all of the evidence.[2] Dixie Dairies Corp. v. Commissioner, 74 T.C. 476, 493 (1980).

Courts have identified and considered various factors in deciding questions of debt versus equity. See, e.g., In re Uneco, Inc., 532 F.2d 1204, 1208 (8th Cir. 1976) (10 factors); Estate of Mixon v. United States, 464 F.2d 394, 402 (5th Cir. 1972) (13 factors); Am. Offshore, Inc. v. Commissioner, 97 T.C. 579, 602-606 (1991) (13 factors). The various factors are not equally significant, however, and no one factor is determinative. John Kelley Co. v. Commissioner, 326 U.S. 521, 530 (1946).

Due to differing factual circumstances under which debt-equity questions arise, not all of the factors are necessarily relevant to each case. Dixie Dairies Corp. v. Commissioner, supra at 493-494. The overall analysis of the Court seeks to determine whether there was an intent to create a debt with a reasonable expectation of repayment and, if so, whether that intent comports with the economic reality of creating a debtor-

---

[2] Whether a shift in the burden of proof is applicable in this case is unclear. The parties do not raise the issue, and the record does not indicate when respondent's examination of petitioner's 1996 corporate Federal income tax return began. See sec. 7491; Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. 105-206, sec. 3001(a), 112 Stat. 726 (providing that July 22, 1998, is the effective date of sec. 7491). In any event, resolution of this case does not hinge on placement of the burden of proof.

creditor relationship.  <u>Litton Bus. Sys., Inc. v. Commissioner</u>, 61 T.C. 367, 377 (1973).

Of the 10 factors recognized and considered in <u>In re Uneco</u>, <u>supra</u>, by the Court of Appeals for the Eighth Circuit (the Court to which an appeal of this case lies), we discuss and apply below those factors that are relevant to the facts of this case.[3]

Thin or Adequate Capitalization

No specific ratio of debt to equity is determinative as to whether a corporation is adequately capitalized.  <u>2554-58 Creston Corp. v. Commissioner</u>, 40 T.C. 932, 937 n.3 (1963).

In spite of petitioner's initial debt-to-equity ratio of 26:1, prior to startup of petitioner, petitioner's officers and directors understood petitioner's business and the plastics manufacturing industry and reasonably projected that petitioner would be successful.  As a result of revenues quickly generated by its operations, petitioner's debt-to-equity ratio was reduced in just over 3 years to 4:1.  This reduction indicates to us, in this case, that petitioner was adequately capitalized from its inception.

---

[3]  We omit a discussion of whether a sinking fund was established to retire the debenture notes.  This factor was not addressed by either party.  Our discussion of the risk factor involves a number of the <u>In re Uneco, Inc.</u>, 532 F.2d 1204 (8th Cir. 1976), factors.

Extent to Which Funds Were Used To Acquire Capital Assets

The record is unclear as to exactly for what purpose the debenture funds received by petitioner were used.  A substantial portion of the debenture funds appears to have been used to acquire capital assets.

Proportionality of Interest

Funds received from shareholders in proportion to their respective stock ownership interests may indicate equity investments.  Am. Offshore, Inc. v. Commissioner, supra at 604 (citing Estate of Mixon v. United States, supra at 409).

Each of petitioner's debenture holders was either a shareholder of petitioner or was related to a shareholder of petitioner.  The debenture funds were transferred to petitioner by the debenture holders, not in exact proportion, but in comparable proportion to the respective stock interests of the debenture holders.

Risk

Petitioner's obligation to repay the debenture funds was unconditional.  Payments of principal and designated interest on the debenture notes were not dependent upon profits of petitioner, nor were payments excused or forgiven in the event petitioner sustained losses.  Respondent argues that because the debenture notes were unsecured and subordinated to the secured

debts of petitioner, payments on the debenture notes depended solely on future earnings of petitioner which put the debenture funds at an equal amount of risk as petitioner's equity. Reliance, however, upon future earnings for payment of a purported debt generally does not cause the funds received by a corporation to be treated as equity. See J.S. Biritz Constr. Co. v. Commissioner, 387 F.2d 451, 458-459 (8th Cir. 1967), revg. T.C. Memo. 1966-227.

Third-Party Loans

Funds are more likely to be treated as debt if at the time the funds were received the corporation had credit available from outside sources. Am. Offshore, Inc. v. Commissioner, supra at 605 (citing Estate of Mixon v. United States, supra at 410).

The evidence indicates that petitioner was successful in obtaining secured loans from outside creditors, and at no time was petitioner refused a loan from a third party.

Management Participation

Funds received by a corporation will be more likely treated as equity if, as a result of such receipt, the person transferring the funds had a right to participate in the management of the corporation. Am. Offshore, Inc. v. Commissioner, supra at 603.

The credible evidence indicates that none of the debenture holders was granted a management position or an increase in voting rights as a result of the receipt of the debenture funds by petitioner.

## Payments

A significant debt-equity factor is whether a corporation repays its obligations on time. See Fries v. Commissioner, T.C. Memo. 1997-93 (citing In re Lane, 742 F.2d 1311, 1317 (11th Cir. 1984)).

Petitioner has timely made all scheduled payments of principal and designated interest due on the debenture notes.

## Intent of the Parties

In resolving debt-equity questions, both objective and subjective evidence of a taxpayer's intent are considered and given weight in light of the particular circumstances of a case. See In re Uneco, Inc., 532 F.2d 1204, 1209 (8th Cir. 1976).

With regard to the debenture funds, credible trial testimony was offered that a debtor-creditor relationship was intended between petitioner and the debenture holders with regard to the debenture funds. The debenture notes were executed in favor of each of the debenture holders. The debenture holders expected repayment of the debenture funds. The fixed dates for the

payment of principal and designated interest set forth by the debenture notes were honored by petitioner.

The debenture holders' expectation of repayment at the time the debenture notes were executed was reasonable because the debenture holders had an understanding and knowledge of petitioner's business and a reasonable expectation of its likely success. For 1993 through the time of trial in 2002, petitioner timely made the principal and designated interest payments due on the debenture notes, and a majority of the objective factors indicate that a debtor-creditor relationship existed between petitioner and the debenture holders with regard to the debenture funds.

We conclude that petitioner properly treated the $1,337,500 in debenture funds as debt. For 1996, petitioner is entitled to an interest deduction for the $93,746 it paid as interest on the debenture notes.

To reflect the foregoing,

Decision will be entered

for petitioner.