**CUYUNA REALTY COMPANY**

v.

**The UNITED STATES.**

No. 326–63.

United States Court of Claims.

July 20, 1967.

Quinn O'Connell, Washington, D. C., for plaintiff; Robert T. Molloy, Washington, D. C., attorney of record; Gerald J. O'Rourke, Jr., and Weaver, Glassie & Molloy, Washington, D. C., of counsel.

Joseph Kovner, Washington, D. C., with whom was Asst. Atty. Gen., Mitchell Rogovin, for defendant; Philip R. Miller and Richard J. Boyle, Washington, D. C., of counsel.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON and NICHOLS, Judges.

## OPINION

LARAMORE, Judge.*

This is but another version of the debt-versus-equity controversy arising so frequently in the tax field. The facts are simple; they involve the deductibility of accrued and unpaid interest on demand notes given to a parent corporation by its wholly-owned and always-insolvent subsidiary.

In 1912 Cuyuna was organized under Minnesota laws as a subsidiary of Northwestern Improvement Company (NWI) which paid $10,000 par value for all of Cuyuna's authorized and issued capital stock. NWI organized Cuyuna and two other subsidiaries at about the same time to transfer to them all land in Minnesota owned by it in excess of 5,000 acres, in order to comply with a Minnesota statute which then restricted corporate ownership of land to that quantity, with irrelevant exceptions.

Because the new subsidiaries were without funds, NWI agreed to accept their demand promissory notes for the properties transferred, and to accept similar notes for future advances to be made by NWI for their expenses and additional property acquisitions. In November 1912 Cuyuna purchased certain mining leases (optioned by NWI) from the Hill Company for $207,437.50, paying $47,-437.50 in cash and giving back $160,000 in promissory notes for the balance. NWI advanced Cuyuna $37,437.50 for the downpayment (added to the $10,000 paid for capital stock this furnished the downpayment), and before the end of the year purchased $156,000 of the plaintiff's notes from Hill Company. Cuyuna redeemed the remaining $4,000 note to Hill Company in 1916. In February 1913 Cuyuna issued its demand note for $772,294.25 to NWI as payment for the transfer of certain properties and leases. In August 1913 Cuyuna issued NWI its further demand note dated July 1, 1913, for $133,751.28 covering advances by NWI (including interest) for the year ending June 30, 1913. In August 1914 Cuyuna issued another demand note to NWI dated July 1, 1914, for $363,060.14 covering the latter's advances (including interest) for the year ended June 30,

---

* This case was referred to Trial Commissioner C. Murray Bernhardt, who prepared an opinion and findings of fact. We have adopted the statement of fact portion of his opinion and his findings of fact without change. We arrive at the same result via a similar route.

1914, plus interest on Cuyuna's other notes held by NWI. By then Cuyuna's notes issued to or held by NWI totaled $1,462,543.17.

Cuyuna accrued interest on its books, covering its notes with NWI, but never paid any. By October 31, 1956, the unpaid interest accruals totaled $3,648,819.58. On November 20, 1956, NWI gratuitously canceled, forgave and discharged, the interest accruals by corporate resolution, giving as reason the fact that Cuyuna had at all times since its organization been "hopelessly insolvent", and "there is no possibility that it will ever be able to pay any part of said accrued interest". When Cuyuna was recapitalized on December 21, 1956, the notes to NWI were canceled on its own books. The stipulated facts are not informative as to Cuyuna's business over the relevant period of its existence, so it cannot be determined whether it was ever intended to be or had the prospects of being a viable enterprise. Its perennial insolvency would seem to negate the idea.

In its Federal income taxes for 1952–1956 Cuyuna claimed deductions for interest accrued on its notes held by NWI, which interest NWI had not accrued as income in its returns. Cuyuna's returns for the years 1952–1956 reported other income and expense in the net amount of $27,598.98, as opposed to $428,414.45 interest accruals on the notes held by NWI, for a net loss of $400,815.47.

On its returns for the years 1957–1960 Cuyuna claimed net operating loss deductions for the carryover of the losses claimed for the years 1952–1956. Upon audit the Commissioner of Internal Revenue disallowed the loss carryovers and assessed resulting deficiencies on the ground that the deductions of interest accruals on which they were based were improper. On April 8, 1963, Cuyuna paid the deficiencies of $132,534.04, plus interest thereon of $27,802.35. On August 8, 1963, a timely claim for refund

was filed and rejected November 14, 1963. This suit followed immediately.

■ The sole issue is whether the interest accruals by plaintiff arose from valid items of indebtedness between plaintiff and its parent, entitling plaintiff to deductions for Federal income tax purposes. Section 163 of the Internal Revenue Code of 1954 (26 U.S.C. § 163), and section 23 of the 1939 Code, allowed as deductions from gross income in computing net income "all interest paid or accrued within the taxable year on indebtedness". To satisfy the Code provision there must be (1) a debt and (2) interest thereon (3) accrued within the taxable year.[1] It is conceded that interest on the notes in question was accrued annually. That leaves for determination the sole question whether the notes were a debt, as the plaintiff contends, or a capital investment, as the defendant insists. Which it was involves consideration of various factors, no one of which is controlling.[2]

Treasury Regulation 1.166–1(c) provides as follows:

* * * A bona fide debt is a debt which arises from a debtor-creditor relationship based upon a valid and enforceable obligation to pay a fixed or determinable sum of money. * * *

Mertens says:

The important underlying principle is that no valid debt exists unless there is an unconditional obligation of another to pay the taxpayer. It is the sine qua non of the existence of the debt and accordingly of the right to deduct worthless debts. * * * To constitute a valid debt, there must not only be a legal obligation to repay, but the money must have been advanced with reasonable belief at the time that it would be repaid. 5 Mertens, Law of Federal Income Taxation, § 30.03, 1963 rev. [Emphasis in original.]

■ Claim to a debt relationship in a parent-subsidiary transaction merits

---

1. Campbell v. Carter Foundation Production Company, 322 F.2d 827, 831 (5th Cir. 1963).

2. John Kelley Co. v. Commissioner of Internal Revenue, 326 U.S. 521, 66 S.Ct. 299, 90 L.Ed. 278 (1946).

particular scrutiny because the control element suggests the opportunity to contrive a fictional debt, an opportunity less present in an arms-length transaction between strangers. This is not to preclude the possibility that a parent-subsidiary transaction may constitute a bona fide indebtedness; it is merely a warning to be wary.[3] The term indebtedness must be strictly construed. Interest deductions cannot be claimed if there is no indebtedness.[4] It is the taxpayer's burden to establish the indebtedness.[5] The distinction between indebtedness and risk capital is that a loan is made upon the reasonable assumption that it will be repaid no matter whether the business venture is successful or not, while capital is put to the risk of the business.[6]

It is likely that the advances by NWI to Cuyuna in exchange for the latter's notes were intended to create a debtor-creditor relationship at the times they were made in 1912–1914. They were not made to avoid taxes. All but $363,050.14 of the notes totaling $1,462,543.17 were issued prior to the Revenue Act of 1913, 38 Stat. 173. None of the notes would have given plaintiff a tax benefit for the interest accruals at the time the notes were issued, for the Revenue Act of 1909 (36 Stat. 113) and the Revenue Act of 1913, supra, permitted deductions of interest actually paid on debts, rather than interest accruals. We are not informed why NWI preferred to advance funds and transfer properties to Cuyuna in exchange for unsecured demand notes, rather than to subscribe to increases in Cuyuna's capital stock sufficient to produce equivalent funds. Presumably how they wished to accomplish this was their business. It is clear that the motive for the creation of subsidiaries was to circumvent legally the Minnesota statute restricting land holdings by corporations.

In most of the cases in this area, the inquiry has been whether "at the time of the issuance of the instrument * * * [the parties intended] to create a real debtor-creditor relationship." Jack Daniel Distillery v. United States, 379 F.2d 569, p. 580, 180 Ct.Cl. —— (1967), and cases cited therein. Understandably, plaintiff urges us to make the same inquiry here. That inquiry is not the ultimate test, however. The real issue in all these cases is whether there is "indebtedness" on which interest has "accrued within the taxable year," and although this issue can perhaps usually be resolved by examining the initial intention of the parties, that cannot always be the case. The income tax law looks to events in each tax year, Burnet v. Sanford & Brooks Co., 282 U.S. 359, 51 S.Ct. 150, 75 L.Ed. 383 (1931), so in applying section 163, it is proper for courts to inquire for each tax year whether there is indebtedness. A rule that the original intention of the parties should control the character of an instrument for all time would be completely inconsistent with the purpose of the statute. Interest, like an ordinary business expense, is allowed as a deduction from income because it is a cost of producing income. It ceases to be a real cost, if with the passage of time it becomes apparent that the parties have no intention of continuing the debtor-creditor relationship.

The cases which hold that interest continues to accrue even if the debtor has no intention or expectation of ever paying it are not to the contrary. E. g., Fahs v. Martin, 224 F.2d 387 (5th Cir. 1955); Zimmerman Steel Co. v. Commissioner of Internal Revenue, 130 F.2d 1011, 143 A.L.R. 1054 (8th Cir. 1942). They involve situations in which a valid debtor-creditor relationship continues right into and through bankruptcy proceedings. We are concerned with the situation in which the continuance of the relationship is in question. Surely a parent's advance to a subsidiary may start out as bona fide

---

3. Cf. Kraft Foods Co. v. Commissioner of Internal Revenue, 232 F.2d 118 (2d Cir. 1956).

4. John Kelley Co. v. Commissioner of Internal Revenue, supra.

5. Arlington Park Jockey Club v. Sauber, 262 F.2d 902, 905 (7th Cir. 1959).

6. Affiliated Research, Inc. v. United States, 351 F.2d 646, 173 Ct.Cl. 338 (1965).

indebtedness, and may continue as such into insolvency, but the character of indebtedness may vanish when the parent and the subsidiary cease acting like debtors and creditors; perhaps that point is passed when the parent, unlike the reasonable creditor, fails to force the subsidiary into bankruptcy.

■ In the present case, we can assume Cuyuna intended at the outset to meet the notes and interest due NWI, and NWI expected that Cuyuna's operations would be sufficiently profitable to do this. However, we may infer from the resolution of the NWI directors in 1956 stating "Cuyuna Realty Company has operated at a deficit since its organization and, is hopelessly insolvent * *," that it was clear in 1956, and undoubtedly long before then, that there was no debtor-creditor relationship. There can be no doubt that NWI would not have permitted an unrelated debtor to fall so far behind in its payments. The 1956 resolution was not the result of a sudden realization that there was no longer a reasonable expectation of profitable operations. This becomes particularly apparent if we look back to 1952, the first tax year here involved, and view the situation at that time in the light of the indicia that have been developed by the cases. We note that the only hallmark of indebtedness was the form of the transactions, while there were many indicia of contributions to capital: e. g., (1) complete identity of interest between Cuyuna and NWI; Affiliated Research, Inc. v. United States, supra; (2) advances were not repayable upon any fixed maturity date with the exception of the notes to Hill Company assumed by NWI and never paid; John Wanamaker Philadelphia v. Commissioner of Internal Revenue, 139 F.2d 644, 647 (3d Cir. 1943); (3) grossly inadequate ratio of debt to equity; Affiliated Research, supra; (4) advances were proportionate to NWI's 100 percent stock ownership; Ibid.; (5) no attempt was made by NWI to enforce payment of the obligations; Wood Preserving Corp. of Baltimore v. United States,

347 F.2d 117, 119 (4th Cir. 1965); O. H. Kruse Grain & Milling v. Commissioner of Internal Revenue, 279 F.2d 123, 125 (9th Cir. 1960); (6) no outside lender would have made or continued true loans upon the same conditions; Jack Daniel Distillery v. United States, supra; American Processing and Sales Co. v. United States, 371 F.2d 842, 178 Ct.Cl. 353 (1967); Affiliated Research; Wood Preserving Corp.; O. H. Kruse Grain & Milling, supra; (7) most of the advances were used to acquire capital assets; Wood Preserving Corp., supra; and (8) Cuyuna had no funds and its income was never sufficient to make any payments on the advances.

In an effort to avoid the application of the above-cited cases and their numerous brethren, plaintiff will now concede that the $772,294.25 demand note which was issued in February 1913 to NWI as payment for the transfer of certain properties and leases was a contribution to capital. This, of course, materially changes the debt-equity ratio and transforms an otherwise "thin incorporation" into something of apparent substance. Plaintiff's eleventh hour attempt cannot succeed here, however, because there is no proof that the contribution of the land to the equity capital of the corporation would have provided a sufficient earnings base to carry the outstanding indebtedness. There is nothing inconsistent with this and our conclusion that plaintiff has proved a business purpose and absence of tax motivation in casting the 1912–1914 transactions in the form of debt. We are simply saying that for plaintiff to *recast* successfully the earlier transactions into a form that will preserve the interest deduction, it must prove that the new form shows a true debtor-creditor relationship with respect to the tax years before us. It is this burden that plaintiff has not met.

In conclusion, we hold that plaintiff had no indebtedness on which interest accrued in the tax years 1952–1956. Judgment is entered for defendant, and plaintiff's petition is dismissed.