**MISSABE REALTY COMPANY**

v.

**The UNITED STATES.**

**No. 327–63.**

United States Court of Claims.

July 20, 1967.

———◆———

Quinn O'Connell, Washington, D. C., for plaintiff; Robert T. Molloy, Washington, D. C., attorney of record; Gerald J. O'Rourke, Jr., and Weaver, Glassie & Molloy, Washington, D. C., of counsel.

Joseph Kovner, Washington, D. C., with whom was Asst. Atty. Gen. Mitchell Rogovin, for defendant. Philip R. Miller and Richard J. Boyle, Washington, D. C., of counsel.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON and NICHOLS, Judges.

## OPINION

LARAMORE, Judge, delivered the opinion of the court:

This is the companion case to Cuyuna Realty Company v. United States, ct. cl., 382 F.2d 298 decided this day. Both cases raise identical issues of law; their facts vary only in unimportant details. The opinion in *Cuyuna* applies equally to these facts and to plaintiff's new argument conceding that one note was a contribution to capital rather than indebtedness.

For the reasons enunciated in *Cuyuna*, judgment is entered for defendant, and plaintiff's petition is dismissed.

## FINDINGS OF FACT

The court, having considered the evidence, the report of Trial Commissioner C. Murray Bernhardt, and the briefs and argument of counsel, makes findings of fact as follows:

1. Missabe Realty Company (hereinafter referred to either as "Missabe" or "taxpayer") was organized in November 1912 under the laws of the State of Minnesota.

2. Northwestern Improvement Company, a domestic corporation (hereinafter referred to as "NWI"), was the parent of taxpayer, having subscribed and paid for all of taxpayer's authorized and outstanding capital stock, with a par value of $10,000 at the time of plaintiff's organization, and having owned this stock at all times material herein. During the periods material herein, through December 21, 1956, NWI made no further investment in taxpayer which was formally designated as capital or equity. Plaintiff has uniformly maintained its books of account according to the accrual method of accounting.

3. During or before 1911 the officers of NWI became aware of a Minnesota statute which limited the holding of land by corporations in that state to five thousand acres, with certain exceptions not relevant here. NWI's holdings exceeded the limitation. Therefore, a plan was devised and adopted to transfer NWI's excess holdings to subsidiary corporations, including Missabe, newly formed for the purpose of holding title to those properties. The plan provided that NWI would convey the excess property to the new subsidiaries for a stated consideration equal to its investment in these properties, plus a share of NWI's expenditures in exploring properties that were rejected after examination. In addition, the plan provided:

> The consideration for the property transferred will be paid by the new companies giving the Improvement Company demand notes bearing interest at 6%. As the new companies have no funds at present to meet further expenditures for royalties, taxes, expenses or new property acquired, the Improvement Company will from time to time advance such additional money as is needed.

> It will be observed that the financial adjustment is as of date June 30th, 1912; at the end of each fiscal year a further adjustment will be made by charging to the new companies all expenditures made during the year on their account, plus interest, and notes will be made by the three companies to cover.

4. In February 1913 NWI conveyed title to 4926.12 acres of land to Missabe in exchange for a demand note, dated February 19, 1913, in the face amount of $143,548.84, and bearing interest at 6 percent per annum. In March 1913 Missabe transferred its $10,000 cash to NWI as a payment on this note.

5. During the period ending June 30, 1913, advances from NWI to Missabe to meet expenses totaled $4,581.74. On August 15, 1913, Missabe's board of directors authorized the issuance of a demand note, dated July 1, 1913, in the face amount of $4,733.10 to cover those advances, plus interest on these advances from date of receipt to June 30, 1913, in the amount of $151.36. The note was to bear interest at 6 percent.

6. Between June 30, 1913, and June 30, 1914, NWI advanced an additional $2,756.86 to Missabe. On August 18, 1914, Missabe's board of directors authorized the issuance of a demand note, dated July 1, 1914, in the amount of $19,192.20, covering those advances, interest on those advances from date of receipt to June 30, 1914, plus the unpaid interest accrued on notes held by NWI in the following amounts:

| | |
|---|---:|
| Advances | $ 2,756.86 |
| Interest on advances at 6 percent to 6/30/14 | 125.49 |
| Interest unpaid on notes held by NWI to 6/30/14 | 16,309.85 |
| | 19,192.20 |

---

7. Missabe's books of account reflect recordation of the notes described in paragraphs 4, 5, and 6, above; and, that they were shown as outstanding on Missabe's books until December 21, 1956.

8. On November 20, 1956, NWI's board of directors passed the following resolutions:

WHEREAS, this Company owns all of the capital stock of Missabe * * * and holds notes of said Company aggregating the sum of $157,474.14 principal amount upon which interest aggregating $399,983.98 has accrued and is unpaid, and

WHEREAS, said Missabe Realty Company has operated at a deficit

since its organization, is hopelessly insolvent, and there is no possibility that it will ever be able to pay any part of said accrued interest;

\* \* \* \* \* \*

RESOLVED, that this Company gratuitously forgive, cancel and discharge the interest accrued up to and including October 31, 1956. \* \* \*

\* \* \* \* \* \*

9. On November 29, 1956, a plan for recapitalizing Missabe was authorized by NWI's board of directors. That plan provided, *inter alia*, that the demand notes of Missabe held by NWI would be surrendered for cancellation. On December 21, 1956, the plan of recapitalization was effectuated. Immediately prior to the recapitalization, Missabe's balance sheet showed the following:

### ASSETS

*Current Assets*

| | | |
|---|---|---|
| Cash ...........................................$ | | |
| Total Current Assets .......................... | | None |

*Property*

| | |
|---|---|
| Iron Ore Lands ............................... | $127,795.50 |
| Less: Reserve for Depletion—So. | |
| Range Lease ................................. | 1,871.01 |
| Total Property—Net Book | |
| Value .................................. | 125,924.49 |
| Total Assets ............................... | 125,924.49 |

### LIABILITIES

*Current Liabilities*

| | |
|---|---|
| Real Estate Taxes Accrued .......................$ | 1,799.90 |
| Interest Payable—N.W.I. Co. ..................... | 1,295.38 |
| Total Current Liabilities ...................... | 3,095.28 |

*Other Liabilities*

| | |
|---|---|
| Bills Payable—N.W.I. Co. ....................... | $157,474.14 |
| Cash Advances—N.W.I. Co. ...................... | 48,658.41 |
| Total Other Liabilities ........................ | 206,132.55 |

*Capital Stock and Surplus*

| | |
|---|---|
| Capital Stock—100 Shares $100 Par | |
| Value ..................................... | $ 10,000.00 |
| Paid in Surplus ................................. | 399,983.98 |
| Earned Surplus (Deficit) ....................... | (493,287.32) |
| Total Capital Stock and Surplus ................. | $(83,303.34) |
| Total Liabilities ............................. | 125,924.49 |

10. For each of the years subsequent to the issuance of the notes referred to in paragraphs 4, 5, and 6, above, and until December 21, 1956, Missabe recorded the accrual of interest on those notes. No payments of interest were ever made by

Missabe on those notes subsequent to their issuance. During the years 1952–1955, and for the period January 1–October 31, 1956, NWI did not report income from the notes.

11. Plaintiff, in preparing its tax returns, took deductions for the interest accruals and reported in its Federal income tax returns for the years 1952–1956 net losses as follows:

| YEAR | INTEREST CLAIMED PER TAX RETURN ON DEBT OWING TO NWI | OTHER INCOME AND (EXPENSE) NET | NET LOSS REPORTED PER RETURN |
|---|---|---|---|
| 1952.......... | $ 9,448.44 | ($1,510.34) | $10,958.78 |
| 1953.......... | 9,448.44 | (1,780.06) | 11,228.50 |
| 1954.......... | 9,448.44 | (3,797.96) | 13,246.40 |
| 1955.......... | 9,448.44 | (1,174.39) | 10,622.83 |
| 1956.......... | 9,169.08 | (1,082.76) | 10,251.84 |
| Total ..... | 46,962.84 | (9,345.51) | 56,308.35 |

Plaintiff's returns for the years 1952–1956 were not audited, and its treatment of such interest deduction in its returns for those years was not disturbed by the Commissioner. The record does not show whether plaintiff's returns for years prior to 1952 were ever audited.

12. On its income tax returns for the years 1957–1959, Missabe claimed net operating loss carryover deductions in the amount of the losses which it had claimed on its returns for the years 1952–1956. Upon audit, the Commissioner of

Internal Revenue disallowed the deductions claimed by taxpayer on its 1952–1956 returns for interest on the notes held by NWI. Those adjustments decreased the allowable net operating loss carryover to $9,345.51.

13. A tax deficiency plus deficiency interest was assessed against plaintiff and on April 8, 1963, plaintiff paid into the Treasury of the United States the following amounts for the following calendar years:

| YEAR | TAX DEFICIENCY PAID | DEFICIENCY INTEREST PAID | TOTAL |
|---|---|---|---|
| 1957.......... | $ 3,790.62 | $1,145.91 | $ 4,936.53 |
| 1958.......... | 6,376.38 | 1,545.00 | 7,921.38 |
| 1959.......... | 4,003.80 | 729.90 | 4,733.70 |
| Total ..... | 14,170.80 | 3,420.81 | 17,591.61 |

14. Plaintiff filed with the District Director of Internal Revenue, St. Paul, Minnesota, on or about August 8, 1963, timely claims for refund on Form 843.

15. Plaintiff's refund claims were formally disallowed by the Commissioner, whose statutory notice of rejection was duly mailed under date of November 14, 1963. This suit is timely brought.

16. Plaintiff is the sole owner of the claims here relied upon, and no assignment or transfer thereof or any interest therein, has been made.

17. No action on these claims has been taken by the Congress of the United States, or by any Department of the Government except as hereinbefore set forth.

CONCLUSION OF LAW

Upon the foregoing findings of fact, which are made a part of the judgment herein, the court concludes as a matter of law that the plaintiff is not entitled to recover and the petition is, therefore, dismissed.