T.C. Memo. 2006-278


UNITED STATES TAX COURT


HJ BUILDERS, INC., Petitioner <u>v</u>. COMMISSIONER OF INTERNAL
REVENUE, Respondent

PAUL W. AND CHARLENE R. WRIGHT, Petitioners <u>v</u>. COMMISSIONER OF
INTERNAL REVENUE, Respondent


Docket Nos. 8841-05, 8842-05.      Filed December 28, 2006.


<u>Joseph Jay Bullock</u> and <u>Karen Bullock Kreeck</u>, for
petitioners.

<u>S. Mark Barnes</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

COHEN, <u>Judge</u>:  Respondent determined deficiencies and
penalties in these consolidated cases with respect to petitioner
HJ Builders, Inc. (HJ Builders or the corporation), for its

taxable year ended May 31, 2002, and with respect to petitioners Paul W. and Charlene R. Wright (Mr. and Mrs. Wright, respectively; the Wrights, collectively) for their taxable year ended December 31, 2001, as follows:

| Docket No. | Deficiency | Penalty, I.R.C. Sec. 6662 |
|---|---|---|
| 8841-05 | $8,821 | $1,764.20 |
| 8842-05 | 55,562 | 11,112.40 |

After concessions by both parties, the issues remaining for decision are:

(1) Whether disbursements of funds from HJ Builders to Mr. Wright are constructive dividends or repayments of loans;

(2) whether disbursements of funds by HJ Builders to and on behalf of the Wrights' church are deductible by HJ Builders as charitable contributions of the corporation or should be characterized as constructive dividends to the Wrights, deductible as charitable contributions by the Wrights;

(3) whether expenses paid by HJ Builders with regard to a Lexus SUV used by Mrs. Wright are business expenses deductible by HJ Builders or are constructive dividends to the Wrights; and

(4) whether HJ Builders or the Wrights are liable for accuracy-related penalties under section 6662.

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and

all Rule references are to the Tax Court Rules of Practice and Procedure. All amounts have been rounded to the nearest dollar.

FINDINGS OF FACT

Some of the facts have been stipulated, and the stipulated facts are incorporated in our findings by this reference. The principal place of business of HJ Builders was in West Jordan, Utah, at the time that the petition was filed at docket No. 8841-05. The Wrights resided in Salt Lake City, Utah, at the time the petition was filed at docket No. 8842-05.

At all times relevant to these cases, Mr. Wright was the sole shareholder and president of HJ Builders, a corporation engaged in residential construction and real estate development. Mr. Wright is known as Paul W. Wright, P. Wayne Wright, and Wayne Wright. HJ Builders uses the cash method of accounting for tax purposes.

Distributions to Mr. Wright

In 2001, Mr. Wright received a salary of $60,000 from HJ Builders. Mrs. Wright received no wages from HJ Builders that year. Additional miscellaneous checks totaling $72,000 were paid to Mr. Wright by HJ Builders in 2001. These additional amounts were not reported as income on the Wrights' 2001 Federal income tax return.

HJ Builders organized its receipts and disbursements using a system of account codes, each identifying a different category of

business assets, liabilities, and expenses. There is a unique code attributable to "Loans payable P. Wayne Wright" under HJ Builders' accounting system. No code was used to classify the checks to Mr. Wright totaling $72,000. HJ Builders did not deduct any of the additional disbursements to Mr. Wright on its corporate income tax return.

HJ Builders recorded a zero balance under the item "Loans from shareholders" on Schedule L, Balance Sheet per Books, of its Form 1120, U.S. Corporation Income Tax Return, for 2002, which Mr. Wright signed as president of HJ Builders under penalties of perjury, affirming that he had examined the return and its accompanying schedules and statements and that they were true, correct, and complete to the best of his knowledge.

There are purported loans from Mr. Wright to HJ Builders recorded in the corporation's handwritten ledger entitled "Wayne Cash Loans to HJB", none of which are corroborated by a formal promissory note with principal and interest rate corresponding to the amounts recorded in the ledger. The corporate records contain no repayment schedules, notations of regular payments, or interest calculations with respect to any loans from Mr. Wright to HJ Builders.

A Line of Credit Promissory Note (first note) dated September 1, 1995, bearing stated annual interest at 5 percent and payable on demand, was signed by Mr. Wright. The first note

states:  "FOR VALUE RECEIVED, P. Wayne Wright, ("Borrower")
promises to pay to the order of HJ Builders ("Lender"), the
principal sum of One Million Dollars ($1,000,000)".

An additional promissory note (second note) dated March 22,
1996, for the principal amount of $337,500, payable on demand to
Mr. Wright by HJ Builders, bearing stated annual interest at
9.5 percent, or 12 percent if payment is not made upon demand,
was signed on behalf of HJ Builders by Mr. Wright and an
unidentified person.  The second note is unsecured.  The second
note is not listed in the "Wayne Cash Loans to HJB" ledger.
Attached to the second note is one page from a mortgage agreement
dated March 22, 1996, between Mr. Wright and Draper Bank, signed
by Mr. Wright in his personal capacity but stating that the loan
is for the specified business purpose of purchasing investment
property.  The bank loan is for the principal amount of $337,500
as well and charges rates of interest identical to those in the
second note but has a stated maturity date of April 1, 1999, and
is secured by the underlying real estate.

A handwritten document entitled "Wayne's Ledger" lists
disbursements of funds by check number and amount from HJ
Builders to Mr. Wright from July 1997 through December 2002.  No
specific promissory notes or other loan documents are associated
with any entries.  A notation "loans to Wayne YE 5/31/02" is
written next to a bracketed total of $132,000 in disbursements

made between June 5, 2001, and April 2, 2002, which includes the $72,000 amount in dispute.

On February 11, 2002, the corporate office of HJ Builders was burglarized. The police report made by Mr. Wright lists the items reported stolen or destroyed in the incident. No promissory notes were reported stolen or destroyed.

Charitable Contributions

The Wrights are active and contributing members of their church community, and Mr. Wright is especially involved as a leader in church youth group activities. The Wrights wrote personal checks to their church totaling $28,750 in 2001 but deducted only $18,000 in charitable contributions on their 2001 joint income tax return.

Additional checks were written from an HJ Builders account to the Wrights' church in the amount of $4,120 to fund a youth trip and to a bus company in the amount of $1,276 to facilitate the trip. HJ Builders did not receive a written acknowledgment from the Wrights' church indicating that the corporation had made any charitable contributions to the church, and no charitable contribution deductions were claimed by HJ Builders on its tax return for 2002. Instead, the amounts expended by HJ Builders to and for the benefit of the church youth group were deducted as various business expenses on the corporation's income tax return. The $4,120 disbursement was deducted in the corporate records as

a "Commission Expense" under "Cost of Goods Sold".  The $1,276 disbursement was deducted by the corporation as an "Advertising" expense.

Lexus Payment

On July 10, 2001, HJ Builders made a payment of $12,155 to "Lexus".  While there was a 2000 Lexus SUV registered to Mr. Wright individually in 2001, no Lexus was registered in the name of HJ Builders until the corporation acquired a 2003 Lexus SUV.  The check stub from the payment to Lexus listed the item under the corporation's code for "Loans payable P. Wayne Wright". The bill from Lexus was in Mr. Wright's personal name, not in the name of HJ Builders.  No expense deduction was claimed by HJ Builders for the payment to Lexus.  The 2000 Lexus SUV was driven exclusively by Mrs. Wright, who was not a salaried employee of the corporation and was listed as a "housewife" on the Wrights' 2001 return.  No mileage logs were kept by Mrs. Wright or the corporation with respect to the 2000 Lexus.

Notices of Deficiency

The Internal Revenue Service (IRS) commenced an audit of the Wrights' 2001 Form 1040, U.S. Individual Income Tax Return, because of the large percentage of charitable contributions claimed ($18,000) to reported income ($61,176).  The examining agent also observed that the Wrights' standard of living did not appear supportable on their reported income.  When the agent

asked for substantiation of the charitable contributions, he was initially given an alleged receipt from the Wrights' church showing $18,000. When he asked for copies of checks associated with the payments, he was presented with a new tithing donation slip for the amount of $28,750, which showed the same dates of contributions as the prior receipt but different amounts. The larger amounts were substantiated with copies of checks.

When the agent asked about the $72,000 in distributions to Mr. Wright, the representative of the corporation and of the Wrights initially had no explanation. Later the agent was told that the distributions were loan payments, but no supporting documentation was presented.

When the agent asked about travel expense substantiation, he was presented with bills for travel for various family members, including the Wrights' teenaged children, and for greens fees for golf outings. No contemporaneous records substantiating the business purpose of certain trips were provided.

The notices of deficiency determined that checks amounting to $72,000 were taxable to Mr. Wright as constructive dividend income. The notices disallowed the business expense deductions claimed by HJ Builders for the $4,120 disbursement directly to the Wrights' church and the $1,276 disbursement to the bus company. Those amounts were recharacterized as constructive dividends by the corporation to Mr. Wright. The notices allowed

to the Wrights on Schedule A, Itemized Deductions, deductions for the entire $28,750 that was paid directly by the Wrights to their church in 2001.  The notices determined that the $12,155 payment to Lexus by HJ Builders was for a personal vehicle and treated the payment of the personal expense as taxable constructive dividend income to Mr. Wright.  The notices also determined negligence penalties under section 6662 with respect to the Wrights and HJ Builders.

                         OPINION

     Our Findings of Fact describe in some detail the documentary evidence presented during trial and the progress of the audit that resulted in the statutory notices in issue in these cases, and we discuss that evidence further below in relation to specific issues.  Because the only witness presented by petitioners was Mr. Wright, many of the issues depend, at least in part, on the credibility of petitioners' evidence.  Unfortunately, we must conclude that much of the evidence is unreliable.  The record establishes that expenses were mislabeled and that the nature of certain of them was thus concealed; explanations were inconsistent and/or belated; and recollection was nonexistent or faulty.

     Mr. Wright testified that he purposely understated his charitable contributions on his personal return because he understood that the actual amount was not fully deductible.  The

more plausible explanation is that he was advised that, in view of his reported income, claiming the actual amount of charitable contributions would increase the likelihood of audit. The cash contributions made would have approached but not exceeded the 50-percent limitation of section 170(b)(1), and the charitable contributions made from corporate funds would have brought the amount to more than 50 percent of the reported income. Respondent now would allow all of the charitable contributions because of the increase in the Wrights' reportable income, subject to overall reductions in accordance with section 68(a) applicable to 2001.

Cash Disbursements to Mr. Wright

Respondent argues that the $72,000 in disbursements at issue from HJ Builders to Mr. Wright was dividend distributions and taxable income to the Wrights. Petitioners argue that the disbursements were in repayment of loans previously made by Mr. Wright to the corporation.

The evidence presented by petitioners is inconsistent regarding the nature of the cash payments. Petitioners argue that the amounts in Wayne's Ledger reflect repayments of previous loans made by Mr. Wright to HJ Builders. However, a handwritten notation on Wayne's Ledger instead states that the disbursements between June 5, 2001, and May 2, 2002, totaling $132,000 reflect loans to Mr. Wright. We conclude that Wayne's Ledger is

inconclusive regarding both whether there were any loans from Mr. Wright to the corporation and whether the $72,000 in disbursements to Mr. Wright in 2001 was in repayment of those purported loans.

We also are not persuaded that the promissory notes that were presented by petitioners represent true indebtedness of the corporation. Even though the first note clearly states that the borrower is Mr. Wright and the lender is HJ Builders, petitioners argue that the names of the parties in the document are reversed and that Mr. Wright in fact advanced money on several different occasions to HJ Builders pursuant to the first note. The first note is a general line of credit and bears stated annual interest at 5 percent, but the corporation's handwritten loan ledger lists several loans at various interest rates. Neither the corporation nor Mr. Wright has presented any record of an accounting for any alleged advancements, repayments, or accruals of interest regarding funds lent pursuant to the first note. There is no record that links the first note explicitly to any actual monetary advance by Mr. Wright to HJ Builders.

Unlike the general line of credit in the first note, the second note is for a specific amount purportedly advanced from Mr. Wright to HJ Builders. However, the second note is neither listed in the corporation's handwritten ledger of "Wayne Cash Loans to HJB" nor taken into account for book purposes on the

balance sheets of HJ Builders. There is no corporate record of any interest payments or repayment schedules in connection with the second note. Thus the first and second notes are unreliable and unpersuasive evidence in support of petitioners' position that the $72,000 in disbursements to Mr. Wright in calendar year 2001 was in repayment of prior loans by Mr. Wright to HJ Builders.

Other conflicting evidence in the record prevents us from concluding either that the disbursements to Mr. Wright were in repayment of prior loans or that any such loans ever existed. Although HJ Builders had an accounting code for loans payable to Mr. Wright, no code was used to classify the payments totaling $72,000 to Mr. Wright in 2001, and HJ Builders recorded no shareholder loans on its Federal tax return. Petitioners have also claimed that the loan documents were stolen in a burglary of HJ Builders' offices on February 11, 2002. However, no loan or other corporate documents are included in the list of stolen items provided to the police. Mr. Wright's uncorroborated testimony that the loan documents were stolen in the burglary is unpersuasive. See Simpson v. Commissioner, T.C. Memo. 1999-274, affd. 23 Fed. Appx. 425 (6th Cir. 2001).

Petitioners have presented no reliable promissory notes, security agreements, payment schedules, amortization schedules, notations of regular payments, interest calculations, or any

other similar documents to substantiate their claim that the $72,000 in miscellaneous checks paid to Mr. Wright over the course of 2001 was in repayment of loans from Mr. Wright to the corporation. See Meier v. Commissioner, T.C. Memo. 2003-94. Petitioners have not persuaded us that any loans from Mr. Wright to HJ Builders existed during the years in issue, and thus we must conclude that the cash disbursements to Mr. Wright in 2001 were not made in repayment of such alleged loans.

Even if petitioners had presented consistent and credible evidence that the cash payments to Mr. Wright were in repayment of prior loans to the corporation, we would conclude, based on the facts and circumstances of these cases, that those prior loans were in reality equity contributions and not debt.

Claims of a debt relationship in a transaction between controlling shareholders and their closely held corporations warrant heightened scrutiny because, unlike the situation in an arm's-length transaction between unrelated parties, there is an opportunity and often a motivation to have investments treated as debt obligations rather than as capital contributions. Fin Hay Realty Co. v. United States, 398 F.2d 694, 696 (3d Cir. 1968); Cuyuna Realty Co. v. United States, 180 Ct. Cl. 879, 883-884, 382 F.2d 298, 300-301 (1967). When presented with the issue of whether a purported loan is debt or equity, the courts have generally weighed the following factors:

> (1) the intent of the parties; (2) the identity between creditors and shareholders; (3) the extent of participation in management by the holder of the instrument; (4) the ability of the corporation to obtain funds from outside sources; (5) the "thinness" of the capital structure in relation to debt; (6) the risk involved; (7) the formal indicia of the arrangement; (8) the relative position of the obligees as to other creditors regarding the payment of interest and principal; (9) the voting power of the holder of the instrument; (10) the provision of a fixed rate of interest; (11) a contingency on the obligation to repay; (12) the source of the interest payments; (13) the presence or absence of a fixed maturity date; (14) a provision for redemption by the corporation; (15) a provision for redemption at the option of the holder; and (16) the timing of the advance with reference to the organization of the corporation.  [Fin Hay Realty Co. v. United States, supra at 696.]

The factors applicable to these cases all weigh in favor of reclassifying any alleged loans from Mr. Wright to the corporation as equity investments.

First, where funds advanced to a corporation by its shareholders are proportional to the advancing shareholders' equity interest in the corporation, there is an identity between the purported creditor and the purported lender, which gives rise to a strong inference that the funds advanced are additional contributions to risk capital rather than loans.  Segel v. Commissioner, 89 T.C. 816, 830 (1987).  In these cases, Mr. Wright, the purported creditor, was the sole shareholder of the purported debtor, HJ Builders.  Mr. Wright was also the corporation's sole officer and had complete managerial control over the corporation.  Thus, the interests of debtor and creditor

here are identical, and the lack of true bargaining between the parties prevents us from accepting the form of the instrument without an inquiry into the economic reality of the transaction. See Fin Hay Realty Co. v. United States, supra at 697.

Second, when a corporation receives financing that it could not acquire on similar terms from a commercial lender, the character of that financing may be considered equity, not debt. Id.; Segel v. Commissioner, supra at 828-829. Attached to the second note is a mortgage from Draper Bank for the same principal amount as the second note and with terms identical to it, except that the mortgage has a stated maturity date and is secured by the underlying realty. Regarding the relationship between the second note and the mortgage document, Mr. Wright testified at trial:

> Later on, when my funds were depleted and I wasn't able to loan the corporation money, I then approached commercial lending institutions who, because of the number of years that I've been in the business and had established a track record, they were willing to loan me personally funds that I then loaned to the corporation.

Comparing the second note and the related mortgage document, the second note had no stated maturity date and was not secured, which put Mr. Wright in a riskier position than Draper Bank. Draper Bank, as a disinterested lender, provided the loan to Mr. Wright for a fixed maturity date and required collateral as security for repayment. See Fin Hay Realty Co. v. United States,

supra at 696.  Had the corporation actually paid him interest, Mr. Wright would have received the exact same interest, or compensation for the use of his money, as he was required to pay to Draper Bank on its related mortgage.  However, Mr. Wright's purported loan to the corporation was a much riskier investment than the Draper Bank mortgage because it was unsecured and thus logically would have commanded a higher interest rate in the market to compensate Mr. Wright adequately for the increased risk.  Mr. Wright could have gained no economic advantage from the nominal interest he would have received from the corporation on the second note, which supports respondent's argument that the second note was a contribution of risk capital to the corporation and not evidence of true indebtedness.

Finally, no interest payments were ever made to Mr. Wright, and no interest was accrued with regard to any alleged loans.  A purported lender who does not insist on interest payments is considered to be interested in the future earnings of the corporation and takes the investment risk of a contributor to capital, rather than that of a true lender.  Segel v. Commissioner, supra at 833.  A disinterested lender in an arm's-length transaction would insist on interest accruals and payments.  A disinterested lender would also insist on memorializing the loan and its terms in a formal promissory note, none of which exist to corroborate the alleged loans recorded in

the corporate ledger "Wayne Cash Loans to HJB". Therefore, we conclude that any alleged loans from Mr. Wright to HJ Builders were equity contributions to risk capital rather than true debt. See Fin Hay Realty Co. v. United States, 398 F.2d at 696; Segel v. Commissioner, supra at 832. Thus the disbursements totaling $72,000 in 2001 were dividend distributions taxable to Mr. Wright.

On brief, petitioners assert for the first time that HJ Builders did not have enough earnings and profits in calendar year 2001 to allow for dividend treatment of the distributions paid out to Mr. Wright that year. Petitioners argue that adjustments should be made to HJ Builders' stated earnings and profits to account for previous distributions to Mr. Wright that should have been treated, for both book and tax purposes, as dividend distributions but were not. Respondent argues that allowing this belated argument would prejudice respondent.

The Court has consistently allowed a party to rely on a theory only if the opposing party is provided with fair warning and is not prejudiced by the need to gather additional evidence to address the opposing party's theory adequately. Seligman v. Commissioner, 84 T.C. 191, 198-199 (1985), affd. 796 F.2d 116 (5th Cir. 1986). Although petitioners claim that Wayne's Ledger represents amounts distributed to Mr. Wright that reduced HJ Builders' earnings and profits balance in previous years,

there is inadequate evidence in the record to support petitioners' contentions and calculations. The ledger is unreliable for the reasons previously indicated. Raising the issue of the proper calculation of earnings and profits for the first time on brief has deprived respondent of the opportunity to consider the issue and to examine and/or produce relevant evidence. Therefore, we shall not consider petitioners' earnings and profits argument.

Charitable Contributions

Respondent disallowed the $4,120 payment to the Wrights' church directly and the $1,276 payment for the benefit of the church's youth group that were initially claimed as business expenses of the corporation, characterized the amounts as constructive dividends to Mr. Wright, and now proposes to treat the amounts as charitable contributions deductible on the Wrights' Federal tax return for 2001.

When a corporation pays the personal expenses of a shareholder without expectation of repayment, it may make a constructive dividend distribution taxable to the shareholder. Magnon v. Commissioner, 73 T.C. 980, 993-994 (1980). Whether a constructive dividend exists turns on whether the distribution was primarily for the benefit of the shareholder. Hood v. Commissioner, 115 T.C. 172, 179-180 (2000). Mr. Wright testified at trial that he was personally involved as a counselor in his

church's youth activities and felt he had a responsibility toward the youth in his church, which factors led him to cause the checks to be issued to and for the benefit of his church. Such charitable motivations, absent some link to the corporation, are personal. These payments by the corporation bestowed an economic benefit on Mr. Wright, who was the true charitable donor based on the economic reality of the transactions, and thus the distributions out of the corporation to facilitate the youth retreat from the Wrights' church were taxable constructive dividend income to Mr. Wright.

Lexus

Petitioners dispute respondent's determination that the $12,155 paid to Lexus on July 10, 2001, was a constructive dividend to Mr. Wright. Though HJ Builders did not deduct the $12,155 payment to Lexus as a business expense on its Form 1120, petitioners now argue that the purchase of the Lexus was a capital expenditure by the corporation and not properly characterized as an actual or constructive payment to Mr. Wright.

The Lexus vehicle for which payment was made by the corporation was registered in the name of Mr. Wright individually, not HJ Builders. The vehicle was driven exclusively by Mrs. Wright, who was not a salaried employee of the corporation. The corporation's check stub characterized the payment to Lexus as a loan payable to P. Wayne Wright.

Petitioners have presented no reliable evidence that the Lexus was a business asset. Although Mr. Wright testified that his wife used the Lexus exclusively for business, she did not appear at trial. Deductions related to passenger vehicles are not allowable unless the taxpayer substantiates by adequate records, or by sufficient evidence corroborating the taxpayer's own statement, the time, place, and business purpose of the vehicle's use. Sec. 274(d)(4). Although HJ Builders did not claim a business expense deduction for the payment to Lexus, petitioners argue that the payment is not income to the Wrights because the Lexus vehicle was a business asset. No records of use of the vehicle were provided by petitioners. Therefore, we conclude that the $12,155 payment to Lexus was a personal expense of the Wrights paid by the corporation and thus a constructive dividend distribution out of the corporation to Mr. Wright in 2001. Magnon v. Commissioner, supra at 993-994.

Section 6662 Penalties

Section 6662 imposes a 20-percent accuracy-related penalty on any underpayment of Federal income tax attributable to a taxpayer's substantial understatement of income tax or negligence or disregard of rules or regulations. Sec. 6662(a) and (b)(2). Section 6662(c) defines "negligence" as including any failure to make a reasonable attempt to comply with the provisions of the

Internal Revenue Code and defines "disregard" as any careless, reckless, or intentional disregard.

Petitioners have conceded that many of the claimed business expenses disallowed by respondent in the notices of deficiency were personal expenses of the Wrights, not deductible by HJ Builders, and represent additional income to the Wrights. The evidence includes failure to maintain adequate records or to substantiate deductions, mislabeling of expenses, and the errors now conceded by petitioners. Petitioners have not addressed, at trial or on brief, the accuracy-related penalties determined by respondent pursuant to section 6662. Thus we deem petitioners to have conceded their liability for the penalties. See, e.g., Levin v. Commissioner, 87 T.C. 698, 722-723 (1986), affd. 832 F.2d 403 (7th Cir. 1987); Hendricks v. Commissioner, T.C. Memo. 2001-299.

Therefore, petitioners are liable for the accuracy-related penalties determined under section 6662.

To reflect the foregoing,

Decisions will be entered

under Rule 155.